IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOANN ORTIZ,

    Plaintiff,

v.                                                                       CV 16-739 WPL/KK

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

**ORDER GRANTING MOTION TO BIFURCATE AND STAY**

Joann Ortiz was injured when she was involved in a collision with an uninsured motorist on January 7, 2013. According to Ortiz, she was making a left turn at an intersection in Santa Fe, New Mexico when her vehicle was hit by an uninsured motorist who was speeding and who fled from the scene of the accident. Safeco Insurance Company issued an automobile insurance policy to Ortiz's spouse with uninsured motorist (UM) coverage with bodily injury limits of $200,000 per person, and Ortiz is an insured under the policy. Safeco disputed both liability for the accident and the extent of Ortiz's damages. When Ortiz and Safeco were unable to reach a settlement of Ortiz's claim, Ortiz filed suit. In Count I of her Complaint, Ortiz seeks to recover damages under her UM coverage. In Count II, Ortiz alleges violations of the Unfair Insurance Practices Act and insurance bad faith claims (collectively "bad faith claims") against Safeco. Safeco has filed a motion to bifurcate and stay discovery on the bad faith claims. (Doc. 18.)

Rule 42(b) of the Federal Rules of Civil Procedure grants trial courts discretion to select specified claims or issues and decide them before proceeding to other matters in the same case where bifurcation will further convenience or avoid prejudice, or when separate trials will be conducive to expedition and economy. FED. R. CIV. P. 42(b). The moving party must demonstrate the need for a

separate trial, as a single trial normally lessens the expense and inconvenience of litigation. *Dixon v. Certainteed Corp.*, 166 F.R.D. 487, 488 (D. Kan. 1996). Bifurcation of issues is appropriate "if such interests favor separation of issues and the issues are clearly separable." *Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003) (quotation omitted). Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may eliminate the need to adjudicate one or more other claims. *See Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004) (unpublished). Regardless of judicial economy or separability, however, "bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

I recently bifurcated bad faith claims from claims for underinsured motorist (UIM) benefits in *Aragon v. Allstate Ins. Co.*, --- F.Supp.3d ---, ---, 2016 WL 2742615 (D.N.M. May 10, 2016). Although Ortiz cites *Aragon* in footnote one to her Response to the motion to bifurcate, she makes no attempt to discuss its analysis or attempt to distinguish it, other than to tell me that my "decision in the *Aragon* case is not binding on the Court." (Doc. 22 at 5.) Of course it is not binding, but since it is a recent decision I entered and contains a lengthy analysis of bifurcation in a similar context, it might have been helpful if Ortiz had discussed *Aragon* and attempted to refute the analysis set out therein.

Instead, Ortiz relies on two other recent cases from the District of New Mexico to support her argument against bifurcation: *Willis v. Government Employees Ins. Co.*, Civ. 13-280 KG/KK (D.N.M. June 17, 2015), and *Sanchez v. Safeco Ins. Co.*, Civ. 14-926 MV/GBW (D.N.M. Sep. 11, 2015). According to Ortiz, both *Willis* and *Sanchez* rejected the same bifurcation arguments being made by Safeco in this case. But Ortiz fails to acknowledge a major distinguishing factor between the cases: in both *Willis* and *Sanchez*, the liability of the other driver was not at issue, while the liability of the UM in this case is very much an issue. Consistent with her approach to

the *Aragon* decision, Ortiz simply ignores Judge Wormuth's statement in *Sanchez* that "bifurcation of discovery is often appropriate where the existence of coverage or the liability of the primary tortfeasor is at issue." *Sanchez*, Civ. 14-926 MV/GBW (Doc. 44 at 2).

Bifurcation of bad faith claims from breach of contract claims can be confusing because of the variety of contexts in which the issue can arise. Bad faith issues can arise in both first party and third party claims, but since Ortiz presents a first party claim against Safeco I will limit my discussion to first party claims. Further complexity arises because an insurer can act in bad faith in its handling of a first party claim for many reasons. *See* UJI Civ. 13-1702 NMRA (2015); *O'Neel v. USAA Ins. Co.*, 41 P.3d 356, 359-60 (N.M. App. 2002). To prove a first-party claim for bad faith failure to pay a claim in New Mexico, an insured must prove that the insurer's reasons for denying payment of his claim were frivolous or unfounded. *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004); UJI Civ. 13-1702. The terms "frivolous or unfounded" mean "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Sloan*, 85 P.3d. at 237. "Frivolous or unfounded" in this context "does not mean 'erroneous' or 'incorrect' . . . [i]t means an utter or total lack of foundation for an assertion of nonliability." *Id*. (quoting *Jackson Nat'l Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992)). An insurance company has a right to deny a claim without exposure to a bad faith lawsuit if it has reasonable grounds to deny coverage or a reasonable belief that the claim is without merit or is overvalued. *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010); *American Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. App. 2012).

An insurer can act in bad faith in its handling of a claim for reasons other than its refusal to pay a claim in full. *O'Neel*, 41 P.3d at 359. An insurer can act in bad faith by: misrepresenting

pertinent facts concerning coverage under the policy; failing to timely and fairly investigate an insured's claim; failing to timely evaluate an insured's claim; exploiting an insured's vulnerable position; and unreasonable delay in notifying the insured about the status of the claim. UJI Civ. 13-1702; N.M.S.A. § 59A-16-20 (1978). These are only a few of the ways an insurer can act in bad faith: unreasonable claims practices "encompass[] all varieties of insurer knavery, from minor carelessness to malice." STEPHEN S. ASHLEY, BAD FAITH ACTIONS LIABILITY & DAMAGES § 5:6 (2d ed.)

Further, cases involving bifurcation of breach of contract claims not involving UM/UIM insurance from bad faith claims are not relevant because the issues in those cases are analytically distinct from the issues presented here. UM/UIM coverage in New Mexico is governed by N.M. STAT. ANN. § 66-5-301 and its implementing regulation, N.M. ADMIN. CODE 13.12.3.9, and the many New Mexico decisions that interpret them. The purpose of New Mexico's UM/UIM statute is to expand such coverage in New Mexico to protect the public from damages caused by uninsured or underinsured motorists by putting the insured in the same position as if the tortfeasor had liability insurance. *Marckstadt v. Lockheed Martin Corp*., 228 P.3d 462, 467 (N.M. 2009); *State Farm Mut. Auto. Ins. Co. v. Maidment*, 761 P.2d 446, 452 (N.M. App. 1988). Insurers have a dual role with respect to UM/UIM coverage. *Hendren v. Allstate Ins. Co*., 672 P.2d 1137, 1140 (N.M. App. 1983). On one hand, the insurer sold a policy to its insured and thus continues to have obligations to its insured: The insurer has a duty to deal fairly and in good faith with its insured in attempting to settle a UM/UIM claim under the policy. *Id*. at 1141. On the other hand, the insurer assumes an adversary role to its insured as to questions involving the UM/UIM's negligence and available defenses that the UM/UIM might have. *Id*.

To recover UM benefits, it is not sufficient to establish that the UM was at fault and the insured suffered damages. New Mexico law requires that the insured must be "legally entitled to

4

recover damages" from the UM. *See* N.M.S.A. § 66-5-301(A) (1978) (UM/UIM coverage protects insureds "who are legally entitled to recover damages" from UM/UIMs); *Maidment*, 761 P.2d at 450 (New Mexico law "expressly requires" that the insured be legally entitled to recover damages from the UM "as a condition to payment under the [UM] coverage"). To be legally entitled to recover damages, the insured must prove the elements necessary to establish the UM's negligence: duty, breach of duty, causation, and damages. *Maidment*, 761 P.2d at 450; *see also State Farm Mut. Auto. Ins. Co. v. Barker*, 96 P.3d 336, 339 (N.M. App. 2004) ("[A]ny question of liability, including proximate cause, would have to be resolved by settlement or litigation before the [UM] would be liable for payment.") If the parties dispute those issues, the determination of the issues must be "made by legal means." *Maidment,* 761 P.2d at 450. The insurer is not "precluded from defending the uninsured motorist or from evaluating the claim any differently than it would have had it provided third party coverage," *Hendren*, 672 P.2d at 1141, and may present its defenses on all issues of the UM's liability for the accident and damages claimed by its insured. *Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210, 218 (N.M. 1996).

There is an additional requirement to recover UIM benefits in New Mexico. To recover UIM benefits, an insured must prove not only that the other driver was negligent and that such negligence caused the insured's damages, but also that the damages exceed the tortfeasor's liability limits. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092, 1098 (N.M. 1985) ("[A]n insured collects from his [UIM] carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less."). *Willis* mis-read New Mexico law when it concluded that an insured need not establish the amount of damages caused by the UIM before the insured can be considered

legally entitled to recover UIM damages. *Willis*, Civ. 13-280 KG/KK (Doc. 100 at 6).[1] Not only must the insured establish the amount of damages caused by the UIM by legal means, those damages must exceed the tortfeasor's liability limits before the insured can recover UIM benefits from his insurer. For example, in *Rivera v. GEICO*, Civ. 14-623 WPL/CG, Docs. 163 & 170 (D.N.M. June 20, 2016; July 22, 2016), the tortfeasor had $250,000 in liability insurance coverage, and the parties stipulated that Ms. Rivera would be entitled to UIM benefits only if her damages from the accident exceeded $250,000.

*Aragon* was a bad faith failure to pay claim because it was a dispute over the value of Ms. Aragon's UIM claim. Ms. Aragon did not allege that Allstate failed to properly investigate her claim, unreasonably delayed notifying her about the status of her claim, or did other acts that would breach its duty to deal fairly with her. To recover UIM benefits, Ms. Aragon had to prove that she was "legally entitled to recover damages" from the UIM. § 66-5-301(A). Ms. Aragon also had to prove that her damages exceeded the tortfeasor's liability limits. *Schmick*, 704 P.2d at 1098. Further, even if her damages exceeded the tortfeasor's liability limits, if the determination of her UIM claim showed that Allstate had reasonable grounds for its valuation of Ms. Aragon's damages (*i.e.*, if the jury awarded a sum similar to what Allstate had offered), that would also dispose of the bad faith claim. I concluded that bifurcation of Ms. Aragon's bad faith failure to pay claim was required under New Mexico law because she had not established that she was legally entitled to recover damages from the UIM. *Aragon*, 2016 WL 2742615, *4. Bifurcation was also appropriate because a decision in favor of Allstate on the UIM claim could render the bad faith claim moot, and

---

[1] It also mis-read New Mexico law when it considered GEICO's pre-litigation decision for settlement purposes not to contest liability when it determined that the insured was legally entitled to recover UIM damages. (*See id.* at 4-5.) Insurers must be given the flexibility to waive consideration of certain defenses they may have when attempting to settle a claim. Otherwise, insurers will be forced to raise all potential defenses at all times, to the detriment of promptly resolving claims of their insureds.

because the UIM and bad faith claims involved different questions of law and fact and would require different witnesses and proof. *Id.* at *4-5.

Because Ortiz makes a claim for UM benefits, she need not prove that her damages exceed the tortfeasor's liability limits, but she still must prove that she is "legally entitled to recover damages" from the UM. § 66-5-301(A). Ortiz's bad faith claim seems to be primarily that she and Safeco disagreed about the value of her claim. In Count II of her Complaint, Ortiz simply parrots the language of the Unfair Insurance Practices Act, stating that Safeco: violated § 59A-16-20(A) by misrepresenting pertinent facts relating to coverage under the policy; violated § 59A-16-20(C) by failing to adopt and implement reasonable standards for the prompt investigation and processing of insured's claims; violated § 59A-16-20(E) by making unreasonable settlement offers that failed to take into account all of the claims available to Ortiz and their value; violated § 59A-16-20(G) by compelling her to institute litigation by offering substantially less than her claim is worth; and violated § 59A-16-20(N) by failing to promptly advise her of the basis for Safeco's offer of compromise settlement. Ortiz presents no facts to support these claims. Ortiz's rote recitation that Safeco acted in bad faith and in violation of the Act are exactly the type of conclusory statements and legal conclusions that have been rejected by courts. *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

Ortiz does allege that Safeco's settlement offers were less than the amount of the medical bills she incurred as a result of the accident. This is a bad faith failure to pay claim that must await resolution after Ortiz has proven that she is legally entitled to recover damages from the UM. A jury could find that Ortiz caused the accident by turning in front of the UM. If the jury reached that conclusion, Safeco would prevail on Ortiz's claims for UM and bad faith benefits. The jury could apportion fault between Ortiz and the UM concerning how the accident occurred, or could find the UM at fault for causing the accident. The jury would also have to determine

whether the accident caused the injuries Ortiz claims to have sustained, and what damages Ortiz is entitled to for those injuries. No one can predict the jury's results on these issues. See, for example, *Smith v. Farmers Ins. Co.*, Civ. 14-1073 MCA/WPL, Doc. 26 (D.N.M. May 2, 2016), where Ms. Smith claimed she was injured when her vehicle was rear ended by another vehicle and that she incurred $8,700.00 in medical bills as a result of the accident. The jury found the other driver at fault, but only awarded Ms. Smith $9,529.00 in total damages.

Ortiz raises three other practical concerns to argue against bifurcation and stay of the bad faith claim, but they can be dispensed with easily. First, she argues that bifurcation will require two different juries and that she will be forced "to fully redo the first trial" during the second trial, which will allow Safeco "to defend against the original [UM] claim once again, with the hope and possibility that the second jury will be more accommodating to its position." (Doc. 22 at 7.) This is nonsense, of course. The first trial will determine whether Ortiz is legally entitled to recover damages from the UM. Testimony at the first trial would be expected from Ortiz, the investigating police officer and other liability witnesses, accident reconstruct experts, and from Ortiz's treating physicians and damage experts retained by the parties. Liability for the accident, causation, and the damages Ortiz is entitled to recover will all be conclusively established by the jury. The second trial will examine the separate issue of whether Safeco acted in bad faith in its evaluation of Ortiz's claim. Testimony at the second trial would focus on Safeco's evaluation of Ortiz's claim, and Safeco's adjuster and other representatives, and experts in claims handling, would likely testify.

Second, Ortiz asserts that she needs to do discovery on the bad faith claim even if bifurcation is ordered because otherwise "it seriously hamstrings the possibility of pre-trial resolution" of both claims. (Doc. 22 at 6-7.) While this argument is not nonsense, the District of New Mexico's experience with bad faith cases suggests it is not true. Most cases settle before trial, and UM/UIM cases with bad faith claims seem to settle with the same frequency as other cases. In *Aragon*, where I

bifurcated the UIM and bad faith claims, Ms. Aragon and Allstate settled all claims after completing discovery on the UIM claim and before trial of the UIM claim and discovery on the bad faith claim. *Aragon*, Civ. 16-069 WPL/SCY, Docs. 31 & 43 (D.N.M. May 10, 2016; Aug. 31, 2016). A similar result was reached in *Beard v. Allstate Prop. & Cas. Ins. Co.*, Civ. 11-1067 RB/WDS, Docs. 48 & 51 (D.N.M. Oct. 31, 2012; Feb. 12, 2013). In other cases, the parties agreed to bifurcate the UM/UIM and bad faith claims, and promptly settled all claims asserted. *Martinez v. Hartford Ins. Co.*, Civ. 16-261 WJ/WPL, Docs. 18 & 20 (D.N.M. Aug. 11, 2016; Sept. 8, 2016); *Tepper v. GEICO Gen. Ins. Co.*, Civ. 16-223 KK/WPL, Docs. 11 & 28 (D.N.M. Apr. 27, 2016; Aug. 12, 2016); *Casali v. GEICO Gen. Ins. Co.*, Civ. 16-778 WJ/WPL, Docs. 19 & 22 (D.N.M. Aug. 16, 2016; Sep. 7, 2016). In another case where bifurcation was ordered, the parties did discovery on the UIM claim and settled that claim without trial, proceeded with discovery on the bad faith claims, and then settled the bad faith claims before trial. *See Rivera v. GEICO Gen Ins. Co.*, Civ. 14-623 WPL/CG, Docs. 56 & 179 (D.N.M June 1, 2015; Sep. 9, 2016).

Finally, Ortiz argues, in passing, that she is approaching the age of 70 and that bifurcation will delay a prompt resolution of these issues. While this argument has some appeal, its primary force is dissipated by the fact that Ortiz waited more than three years and four months after the accident occurred to file suit against Safeco and the likelihood that this case will settle.

Because Ortiz has brought a bad faith failure to pay claim against Safeco, but has not yet established that she is legally entitled to recover damages from the UM, Safeco's motion to bifurcate and stay discovery on the bad faith claims is granted.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.

9